UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VIRGINIA A. ARGENZIANO,

    Plaintiff,

v.                                        Case No:   2:14-cv-488-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Virginia A. Argenziano's Complaint (Doc. 1) filed on August 25, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is reversed and remanded pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work,

or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On April 25, 2010, Plaintiff filed an application for disability insurance benefits asserting an onset date of March 26, 2010. (Tr. at 103,150-51). Plaintiff's application was denied initially on November 10, 2010, and on reconsideration on May 27, 2011. (Tr. at 103-04). A hearing was held before Administrative Law Judge Stuart T. Janney on November 20, 2012. (Tr. at 50-95). The ALJ issued an unfavorable decision on December 13, 2012. (Tr. at 34-44). On June 30, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-30). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 25, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See*, Doc. 11).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

2

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (Tr. at 36). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 26, 2010, the alleged onset date. (Tr. at 36). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post multiple cerebral vascular accidents; history of hypercoagulable state of undetermined etiology; history of hyperlipidemia; coronary artery disease with a history of infarction; cognitive disorder, not otherwise specified; and adjustment disorder with depressed and anxious mood. (Tr. at 36). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 37). At step four, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform a light work,

> except that she may never climb ladders, ropes, or scaffolding but may occasionally climb ramps and stairs; frequently balance; occasionally stoop, kneel, crouch, and crawl; no use of the bilateral upper extremities for overhead work; no concentrated exposure to extreme cold; no exposure to work at unprotected heights; due to residual stroke deficits involving speech, she should work in a task or object-oriented setting as opposed to a service-oriented setting where verbalization is not required as a routine part of task completion on more than an occasional basis, such as might be the case with a receptionist or greeter, telephone solicitation work, or information clerk, and should also have no work-related interaction with the public; due to a moderate degree of difficulty maintaining sustained concentration, persistence, and pace, she can only understand, remember, and carry out rote or routine instructions that require the exercise of little independent judgment or

>decision making for two-hour work segments, but not if the tasks are complex or detailed, and she specifically cannot perform tasks that require rapid processing of multiple sources of information (i.e., no multi-tasking); she must work where there is little change in terms of tools, processes, or settings, and change is introduced gradually; and she must work in an environment that is not stringently production or quota-based, and then may not perform fast-paced assembly line work.

(Tr. at 39). The ALJ determined that Plaintiff is not capable of performing her past relevant work which was the following: a) as a retail manager (DOT #185.177-014) and b) as a restaurant manager (DOT #185.137-010). (Tr. at 42). The ALJ determined that a retail manager position is light work as generally performed, but medium work as actually performed with a SVP of 7. (Tr. at 42). The ALJ found that a restaurant manager position which is also listed as light work as generally performed, but medium work as actually performed has a SVP of 5. (Tr. at 42). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that Plaintiff is able to perform in the national economy. (Tr. at 43). The ALJ obtained the testimony of a vocational expert who testified that Plaintiff would be able to perform the following jobs: a) food products sorter (DOT #529.67-186); b) non-postal service mail clerk or sorter (DOT #209.687-026); and c) administrative clerk or office helper (DOT #239.567-010). (Tr. at 43). The ALJ concluded that Plaintiff had not been under a disability from March 26, 2010 through the date of the decision. (Tr. at 44).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such

4

relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises four issues on appeal. As stated by Plaintiff, they are:

1) The Appeals Council erred by failing to adequately consider the additional evidence submitted, and by not remanding this matter to the ALJ, in part because the additional evidence undermined the ALJ's findings and conclusions.

2) Particularly because the mental health evidence of record, when considered as a whole, documents a deterioration in Ms. Argenziano's cognitive functioning over time, the ALJ's reasons for not crediting the opinion of Dr. Umali, who performed the most recent consultative psychological examination, are not supported by substantial evidence.

3) The ALJ did not properly discount Ms. Argenziano's subjective complaints and credibility.

5

    4) The Commissioner failed to sustain her burden of establishing that there was other work Ms. Argenziano could perform, as the hypothetical questioning relied upon by the ALJ cannot be deemed supported by substantial evidence.

(Doc. 18 at 1-2).

### A. Additional Evidence Submitted to the Appeals Council

Plaintiff asserts that the Appeals Council erred in failing to remand this case to the ALJ. Plaintiff contends that the Appeals Council failed to adequately consider the letter by Renee Rottet, MSW, LCSW and Thomas Holsworth, Ph.D dated January 30, 2013, submitted to the Appeals Council. The Commissioner asserts that the Appeals Council did consider the additional evidence, and properly declined Plaintiff's request for review.

The Appeals Council received the following additional evidence and made the following determination:

> We considered the records from Center for Psychological Services, dated March 6, 2012 (3 pages). This document is not new because it is an exact copy of Exhibit 27F.
>
> We also looked at treatment records from Center for Psychological Services dated January 30, 2013 (3 pages). The Administrative Law Judge decided your case through December 13, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 13, 2012.

(Tr. at 2). The Appeals Council denied Plaintiff's request for review and found that the additional information does not "provide a basis for changing the Administrative Law Judge's decision." (Tr. at 2). One rule the Appeals Council applied stated that if it received "new and material evidence and the decision is contrary to the weight of all the evidence now in the record," then it would have granted review. (Tr. at 1).

6

A claimant is generally permitted to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Ingram*, 496 F.3d at 1261. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

### 1. Letter Dated January 30, 2013, Submitted to Appeals Council

The ALJ's Decision was dated December 13, 2012. (Tr. at 44). On January 30, 2013, less than a month after the ALJ's Decision, a letter by Renee Rottet, MSW, LCSW, Plaintiff's treating therapist, and Thomas Holsworth, PH.D/HSPP was submitted to the Appeals Council concerning the status of Plaintiff's health. (Tr. at 17-19). The letter contains the following information. (Tr. at 17-19).

The letter was a "clinical summary of previous letters dated January 31, 2011, May 4, 2011 and March 6, 2012." (Tr. at 17). Ms. Rottet began seeing Plaintiff for individual counseling from January 2011 through March 2011, and then continued seeing Ms. Rottet after May 2011. Ms. Rottet indicated that Plaintiff was dedicated to her therapy, and followed suggestions for life management and education as to her disability. (Tr. at 17). Ms. Rottet documented a decline in Plaintiff's overall functioning within her home and in the community. (Tr. at 17). Specifically, Ms. Rottet found that Plaintiff's memory loss, executive functioning

7

and attempts at social activities had continued to deteriorate, and Ms. Rottet determined that Plaintiff was not able to work on a part-time or full-time basis. (Tr. at 17). In addition, Ms. Rottet found that Plaintiff's overall symptoms had deteriorated, and her depression and anxiety had "continued to lead to impairment[s] in daily life activit[ies]." (Tr. at 17). An example was provided showing Plaintiff had to quit one volunteer job and reduce her time and role at another job due to her anxiety and short-term memory problems. (Tr. at 17).

The letter included that Plaintiff met the diagnostic criteria for Dementia, Major Depressive Disorder (Severe/recurrent-currently without psychotic features) and Generalized Anxiety Disorder, with an additional diagnosis of Phase of Life Problems. (Tr. at 17). Plaintiff's anxiety had increased to the point that she needed additional treatment for it in order to prevent panic attacks. (Tr. at 17). The letter also provided that Plaintiff suffered from significant grieving for the loss of her memory, and for the way her impairments impacted her daily life activities. (Tr. at 17).

Plaintiff was experiencing symptoms that interfered with basic recall for tasks, a loss of memory, "and not being able to differentiate fully the 'order' of events and sequencing needed for follow through." (Tr. at 18). Ms. Rottet found that Plaintiff continued to struggle with basic daily tasks such as cleaning a room, and organizing to be able to go shopping. (Tr. at 18). Plaintiff had been scheduled for two appointments in January 2013, and additional testing in February 2013. (Tr. at 18).

Ms. Rottet found that Plaintiff tried to be as independent as she possibly could, and had been an "overachiever" in the workforce. (Tr. at 18). Ms. Rottet was confident that if Plaintiff were able to achieve and maintain employment, she would do so. (Tr. at 18). Ms. Rottet found that Plaintiff struggled each day with tasks and skills that she would need to maintain

employment, and Plaintiff was experiencing a sense of failure that she could not perform these tasks. (Tr. at 18). Ms. Rottet found that Plaintiff had demonstrated cognitive and memory problems often associated with the prefrontal lobe area, poor concentration to inability to concentrate, moments of inattentiveness, poor ability to attend or elaborate her thoughts, impaired judgment, impaired "gatekeeper" abilities, motor speech problems, being self-conscience of verbal expression, difficulty in learning new information, consistent agitation, irritability, and receptive/sensory aphasia. (Tr. at 18). Plaintiff felt that she had a hearing deficiency because of how her brain disconnected from processing new information. (Tr. at 18). Ms. Rottet found that these impairments would continue without the possibility of repair and/or improvement. (Tr. at 18). At the early stages of her brain injury, Plaintiff was willing to work with Ms. Rottet in a workbook, however it became evident that Plaintiff was not able to read and maintain comprehension in order to master or complete the material. (Tr. at 18).

Ms. Rottet found that Plaintiff continued to struggle with processing and accepting that her disability would not improve. (Tr. at 18). Ms. Rottet found that since the letter dated March 2012 was written, Plaintiff had suffered a noticeable change and decline in her functioning. (Tr. at 18). The uncertainty of Plaintiff's future triggered more anxiety and depressive symptoms and caused her to continue to deteriorate, and placed her in an unending downward cycle. (Tr. at 18). Ms. Rottet opined that Plaintiff will require lifelong support through medication, community resources, and therapy. (Tr. at 18). Ms. Rottet found Plaintiff's prognosis to be poor to guarded, at best. (Tr. at 19). This letter dated January 30, 2013 was signed by both Renee Rottet, MSW, LCSW and Thomas Holsworth, Ph.D/HSPP. (Tr. at 19).

## 2. ALJ's Decision

The Transcript contains the records of Ms. Rottet from January 31, 2011, May 4, 2011, and March 2, 2012. (Tr. at 507-509, 522-24). The ALJ discounted Renee Rottet's opinion which found Plaintiff suffered from major depressive disorder, dementia and bereavement and phase of life problems. The ALJ discounted Ms. Rottet's opinion because Ms. Rottet is a licensed clinical social worker and was not an "acceptable medical source." (Tr. at 37). The ALJ determined that Ms. Rottet's opinions could not be used to establish a "medically determinable impairment" citing to SSR 06-3p. (Tr. at 37). The ALJ noted that Melissa Umali, Psy.D., a consultative psychological examiner found that Plaintiff's memory deficits revealed in Plaintiff's cognitive testing were consistent with her reported diagnosis and history of stroke related dementia. (Tr. at 37). The ALJ then noted that Dr. Umali did not go as far as confirming the dementia diagnosis. (Tr. at 37). The ALJ concluded that there are no medically acceptable sources establishing a diagnosis of major depressive disorder, dementia, or bereavement and phase of life problems. (Tr. at 37). "As such, [the ALJ found that] the evidence fails to establish that any of these impairments are 'medically determinable' thereby precluding the undersigned from considering any of them in fashioning the determined residual functional capacity." (Tr. at 37, citing SSRs 96-3p and 96-4p).

The ALJ found that Stacia Hill, Ph.D., a State agency psychological consultant assessed Plaintiff's mental functioning abilities and found them to be consistent with performing unskilled work with limitations in attention and pace. (Tr. at 41). The ALJ found Dr. Hill's evaluation to be consistent with Christopher Sullivan, Ph.D.'s evaluation which showed some mild cognitive inefficiencies, but problem solving was within normal limits, and intact overall intelligence. (Tr. at 41). The ALJ then mentioned that Dr. Umali opined that Plaintiff would be very unlikely to

maintain full-time or even minimal part-time employment due to her difficulties with memory, organization, learning new information, and multi-tasking. (Tr. at 41). The ALJ found Dr. Umali's opinion to be consistent with Renee Rottet's medical source statement indicating Plaintiff was not able to work on a part-time or full-time basis. (Tr. at 42). The ALJ gave Dr. Umali's opinion as to Plaintiff's ability to work little weight because it "sharply conflicts" with the neuropsychological examination findings of Dr. Sullivan. (Tr. at 42). The ALJ also included that Plaintiff showed improvement with therapy as to cognition, and that her daily activities are consistent with the mental demands of certain unskilled work. (Tr. at 42). For these reasons, the ALJ gave little weight to Ms. Rottet's opinion regarding Plaintiff's ability to work. (Tr. at 42). The ALJ relied on Plaintiff having engaged in a wide range of activities that "more strongly supports the opinions of Drs. Hill and Sullivan than the opinion of Dr. Umali or Ms. Rottet." (Tr. at 42).

### 3. Dr. Sullivan

On June 22, 2010, Christopher Sullivan, Ph.D., a clinical Neuropsychologist saw Plaintiff. Dr. Sullivan noted that Plaintiff had a history of multiple strokes and a traumatic brain injury in 1996. (Tr. at 340). Plaintiff was complaining of cognitive brain difficulties. (Tr. at 340). Plaintiff provided her medical history which included a cerebral artery distribution stroke in February 2007, a second stroke in June 2007, a third stroke with possible TIA in January 2008, and a forth stroke in March 2010 involving the left middle cerebral artery. (Tr. at 341). Plaintiff reported that after her forth stroke, she could not speak or swallow. (Tr. at 341). Plaintiff told Dr. Sullivan that she had both occupational and speech/language therapy, but her cognitive difficulties had worsened. (Tr. at 341). Plaintiff reported she was more forgetful, and had difficulty multitasking. (Tr. at 341). Plaintiff acknowledged that she was suffering from

11

both depression and anxiety, and was especially bothered by her being fired from her job. (Tr. at 341).

Dr. Sullivan administered testing for his neuropsychological evaluation. (Tr. at 342). Dr. Sullivan found Plaintiff to have a number of mild cognitive inefficiencies consistent with her history of stroke, and that her speed of mental processing was substantially slower. (Tr. at 344). Dr. Sullivan found Plaintiff's problem-solving abilities to be within normal limits and her overall intellect to be intact. (Tr. at 344). Dr. Sullivan found Plaintiff to have clinically significant levels of anxiety and depression. (Tr. at 344). Dr. Sullivan recommended that Plaintiff's medications may need to be adjusted, and she would likely benefit from ongoing supportive psychotherapy. (Tr. at 344). Dr. Sullivan found that Plaintiff may experience some improvement from her last stroke, but had deficits from her older stroke and a complete recovery from her impairments stemming from her second stroke was unlikely. (Tr. at 344). Dr. Sullivan determined that returning to a workload that requires rapid processing of multiple sources of information was not advised. (Tr. at 344). Dr. Sullivan concluded that if Plaintiff had improvement in her neuropsychological status, then he recommended that she be reevaluated to determine appropriate work demands. (Tr. at 344). Dr. Sullivan also found that if improvement was not evident, then Plaintiff may consider applying for disability. (Tr. at 344).

### 4. Dr. Umali

Almost nine months after Dr. Sullivan's evaluation, on March 17, 2011, Plaintiff was evaluated by Melissa Umali, Psy.D., HSPP. (Tr. at 498-503). Dr. Umali observed that Plaintiff's thought process appeared slow. (Tr. at 498). Plaintiff provided a medical history which included her traumatic brain injury and her prior strokes. (Tr. at 498). Plaintiff reported that her neurologist, Dr. Carrie Remmel diagnosed her with Stroke Related Dementia. (Tr. at

12

498). Plaintiff reported that she was able to complete basic hygiene tasks, and was capable of completing housework, cooking, and helping to care for her children. (Tr. at 498). Her husband and children helped her as well. (Tr. at 498). Plaintiff reported that she struggles with remembering to accomplish her daily tasks and had to leave out cues, such as leaving dusting tools in an obvious place to remind her to dust, but even with these cues, it still may take her 2-3 days to remember to do the task. (Tr. at 498).

Dr. Umali administered testing to Plaintiff. (Tr. at 499-502). Dr. Umali found that Plaintiff's ability to listen to oral information and then repeat it immediately and after a delay was in the low average range; her memory for visual details and spatial location was in the low average range; her ability to temporarily hold and manipulate spatial locations and visual details was in the average range; her visual memory performance was in the borderline range; her ability to recall verbal and visual information immediately after the stimuli was in the low average range; her ability to recall verbal and visual information after a 20 to 30 minute delay was in the borderline range; and her delayed memory performance was in the low average range. (Tr. at 502).

After testing, Dr. Umali concluded that Plaintiff displayed significant memory deficits which were consistent with her reported diagnosis and history of neurological problems, including stroke related dementia. (Tr. at 503). Dr. Umali found that based on Plaintiff's severe memory issues and her difficulty with organization, it would be very difficult for Plaintiff to manage her own funds, and she would struggle with learning new information or multi-tasking. (Tr. at 503). Dr. Umali concluded that Plaintiff is "very unlikely to maintain full-time employment or even minimal part-time employment." (Tr. at 502).

13

**5. Analysis**

To determine if the Appeals Council erred, the Court must review the new evidence, find that the new evidence relates to the time period on or before the date of the ALJ's hearing decision, and the new evidence must be material to show that there is a reasonable possibility that the new evidence would change the administrative outcome. The new evidence at issue is the January 30, 2013 letter. The Court will first determine whether the January 30, 2013 letter is from an acceptable medical source, and if it changes the consideration of the evidence submitted to the ALJ which he found to be from a non-acceptable medical source. In his Decision, the ALJ explicitly did not consider Ms. Rottet's opinions. The ALJ found that Ms. Rottet was not an acceptable medical source. Thus the ALJ did not consider her opinion to establish a medically determinable impairment. The ALJ determined that without an acceptable medical source, Plaintiff's diagnosis of major depressive disorder, dementia, or bereavement and phase of life problems could not be established. The ALJ also gave little weight to Dr. Umali's opinion, which was consistent with Ms. Rottet's statement, because it conflicted with Dr. Sullivan's findings.

The Court acknowledges that a licensed social worker, such as Ms. Rottet, does not qualify as an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513(a) and SSR 06-03p.[2] Further, the Court agrees that a non-acceptable medical source, such as a licensed social worker, cannot establish the existence of a medical determinable impairment. *See* SSR 06-03p.

---

[2] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted]. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference . . ." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).

Although not an "acceptable medical source," "other sources" are entitled to consideration as set forth in SSR 06-03p as follows:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. SSR 06-03 provides that opinions from medical sources that are not acceptable, such as licensed clinical social workers, are important and should be evaluated to determine the severity and functional effects of an impairment.

One part of the new evidence presented to the Appeals Council was the January 30, 2013 letter from Ms. Rottet and also signed by Dr. Holsworth, a licensed psychologist, and an acceptable medical source. *See* 20 C.F.R. § 40.1513(a)(2). The letter contained the following: "This letter is a clinical summary of previous letters dated January 31, 2011, May 4, 2011, and March 6, 2012." (Tr. at 17). These prior letters were signed by Ms. Rottet alone. With this new evidence, Dr. Holsworth adopts Ms. Rottet's findings in her previous evaluations of Plaintiff.

The letter of January 30, 2013 provided that Plaintiff met the diagnostic criteria for Dementia, Major Depressive Disorder, and Generalized Anxiety Disorder. (Tr. at 17). Additionally, significant in the letter is the opinion that Plaintiff cannot and will not improve and that she has declined in her cognitive abilities. By signing the letter, Dr. Holsworth has agreed to the contents of the letter. Dr. Holsworth's signature lends support to Ms. Rottet's previous records which the ALJ rejected, at least partially if not wholly, on the basis that Ms. Rottet was not an acceptable medical source. By having Dr. Holsworth sign the letter which included a

15

summary of prior letters by Ms. Rottet, the information in the letter is now coming from an acceptable medical source. The January 30, 2013 letter is from an acceptable medical source and bolsters evidence before the ALJ from Ms. Rottet.

Next, the Court must determine if the evidence is relevant to the time period on or before the ALJ's hearing decision. To determine if the January 30, 2013 letter is relevant, the Court must review the ALJ's opinion and consider the medical records he relied upon to make his decision. The ALJ gave great weight to the opinions of Dr. Sullivan and Dr. Hill.[3] Dr. Sullivan's opinion was dated June 22, 2010. The ALJ cited to Dr. Sullivan's finding that Plaintiff showed some mild cognitive inefficiencies, but problem solving was within normal limits and Plaintiff's overall intelligence was intact. Although these statements are correct, Dr. Sullivan also concluded that Plaintiff **may** experience some improvement from her last stroke, but Plaintiff was unlikely to completely recover from the deficits of her previous stroke. Dr. Sullivan found Plaintiff would be unable to handle a workload that requires rapid processing of multiple sources of information. Dr. Sullivan concluded that if Plaintiff showed improvement in her neuropsychological status, he recommended further evaluation to determine acceptable work demands. However, Dr. Sullivan also concluded that if Plaintiff had no improvement, then Plaintiff should consider applying for disability.

---

[3] Dr. Hill's records consisted of a completed Psychiatric Review Technique dated September 30, 2010. (Tr. at 443-455). Briefly, Dr. Hill found Plaintiff to have a cognitive disability adjustment disorder with anxious and depressed mood. (Tr. at 444, 446). Dr. Hill concluded that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 453). Dr. Hill noted that Plaintiff's problem-solving skills were well within normal limits; was able to perform activities of daily living such as simple cooking, vacuuming, dusting, watering flowers, shopping, watching TV, and using a computer; but did have difficulty with memory and following instructions. (Tr. at 455). Dr. Hill found Plaintiff to be only partially credible as to her the severity of her allegation finding that her allegations of severity were not found in the medical records or on examination. (Tr. at 455).

The January 30, 2013 letter addresses the issue of whether Plaintiff has experienced any improvement. Specifically, the letter contained the following language: "Her [Plaintiff's] overall symptoms have deteriorated and her depression and anxiety has continued to lead to impairment in additional daily life activity." (Tr. at 17). Ms. Rottet "has continued to see a decline in her [Plaintiff's] overall functioning within her home and community. Her memory loss and executive functioning have continued to deteriorate." (Tr. at 17). Her anxiety level had progressed to the point where she needed additional treatment, and her memory continued to decline. Ms. Rottet stated that Plaintiff struggles with her sense of failure in tasks and skills, and has cognitive and memory problems which "cannot and will not improve" triggering more anxiety and depressive symptoms and a continued deterioration. (Tr. at 18).

The ALJ gave great weight to Dr. Sullivan's opinion. Dr. Sullivan saw Plaintiff on June 22, 2010. His opinion was contingent on whether Plaintiff had improvement. Dr. Sullivan concluded that if Plaintiff showed improvement in her neuropsychological status then he recommended reevaluation, but if there was no evidence of improvement, Dr. Sullivan suggested that Plaintiff consider applying for disability. The letter from Ms. Rottet and Dr. Holsworth was dated on January 30, 2013, almost two and one half years after Dr. Sullivan's evaluation. The new evidence submitted to the Appeals Council clearly showed that Plaintiff was not improving and was in fact declining in cognitive abilities and was degenerating as to anxiety and depression. Dr. Sullivan's opinion as to Plaintiff's ability to work was dependent on Plaintiff's medical condition improving, which the new evidence clearly showed it did not.

Dr. Umali saw Plaintiff in March 17, 2011, almost nine months after Dr. Sullivan's evaluation, but prior to the ALJ's Decision. Dr. Umali's opinion was consistent with Ms. Rottet's opinion, and found that Plaintiff displayed significant memory deficits which were

17

consistent with a diagnosis of stroke related dementia. The ALJ noted that Dr. Umali's opinion was consistent with Ms. Rottet's records. However, the ALJ found that Dr. Umali did not go as far as diagnosing Plaintiff with dementia, and found that no acceptable medical source had diagnosed Plaintiff with dementia. The ALJ concluded that this diagnosis was not a medically determinable impairment. The ALJ then gave Dr. Umali's opinion little weight because it conflicted with Dr. Sullivan's opinion.

Plaintiff has shown that the new medical evidence relates to the period of time on or before the date of the ALJ's hearing decision. The ALJ's Decision is dated December 13, 2012. The letter at issue is dated January 30, 2013, less than a month after the Decision. The letter references that it is a summary of previous letters dated January 31, 2011, May 4, 2011, and March 6, 2012, which were all dated before the ALJ's Decision. Further, the letter of January 30, 2013, references the decline and deterioration of Plaintiff's medical condition which is documented to have begun long before the date of the letter. The Court finds that the letter dated January 30, 2013 is chronologically related to the period on or before the date of the ALJ's Decision.

Plaintiff also must show that the new evidence is material and warranting remand by showing that there is a reasonable possibility that the new evidence would change the outcome of the administrative proceeding. The ALJ gave little or no weight to the reports of Ms. Rottet based on her not being an acceptable medical source. With the signature of Dr. Holsworth, the new evidence is considered an acceptable medical source. The letter signed by Dr. Holsworth confirmed the prior records of Ms. Rottet by indicating that it was a summary of those records. The letter evidenced the decline and deterioration of Plaintiff's cognitive abilities, and the decline in her abilities in the home and community. The ALJ gave great weight to Dr. Sullivan's

18

opinion when finding Plaintiff not disabled, yet Dr. Sullivan found that if Plaintiff did not show improvement in her neuropsychological status, then she should consider applying for disability. The January 30, 2013 letter showed no improvement, and in fact documented a decline in Plaintiff's neuropsychological status. Ms. Rottet's opinion was consistent with Dr. Umali's opinion, which the ALJ gave little weight. The Court finds that the letter of January 30, 2013 is new evidence that is chronologically relevant to the period on or before the date of the ALJ's Decision, is material, and warrants remand because there is a reasonable possibility that this new evidence would change the outcome of the administrative proceeding.

### A. Other issues raised

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the Commissioner properly considered all of the relevant medical evidence in the record. Because the Court has found that, upon remand, the Commissioner must reconsider the new evidence submitted to the Appeals Council, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence, and upon remand the Commissioner shall reevaluate all of the medical opinions in combination, including the new evidence submitted to the Appeals Council.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical evidence, including the new evidence submitted to the Appeals Council.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2015.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties